# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

THOMAS GIORDANO and EVELYN ANSING GIORDANO,

    Plaintiffs,

v.

MERRICK GARLAND, TRACY RENAUD, and the UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES,

    Defendants.

Civ. No. 20-07875 (KM)

OPINION

## KEVIN MCNULTY, U.S.D.J.:

Thomas Giordano, an American citizen, married Evelyn Ansing Giordano, a Filipino citizen. The Giordanos applied to the United States Citizenship and Immigration Services (the "Service") for a spousal visa and employment authorization for Mrs. Giordano. The Service denied their applications because Mr. Giordano had previously been convicted of offenses which, under the Adam Walsh Child Protection and Safety Act, Pub. L. No. 09-248, 120 Stat. 622 (2006), preclude the offender from seeking a family-based visa. The Giordanos sued the Service, its Acting Director, and the Attorney General (collectively, the "Government"), asserting claims under the the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the U.S. Constitution. The Government moved to dismiss for lack of subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), and failure to state a claim, Fed. R. Civ. P. 12(b)(6). (DE 15.)[1] In

---

[1]     Certain citations to the record are abbreviated as follows:

    DE = docket entry number

    Am. Compl. = Amended Complaint (DE 11)

    Notice = Notice of Decision (Sept. 8, 2020) (DE 11, Ex. C)

response, the Giordanos cross-moved for summary judgment. (DE 27.) For the following reasons, the Government's motion (DE 15) will be treated as one for summary judgment and is **GRANTED**. The Giordano's motion (DE 27) is **DENIED**.

## I. BACKGROUND

### A. Statutory Background

The Immigration and Nationality Act ("INA") allows a U.S. citizen to petition the Service to classify the citizen's foreign spouse, child, or parent as "an immediate relative," a classification that allows the person to immigrate to the United States. 8 U.S.C. § 1154(a)(1)(A)(i), (b). If that person is already in the United States, he or she may apply to become a lawful permanent resident. 8 C.F.R. §§ 245.1(a), 245.2(a)(2)(B).

That process differs when the Adam Walsh Act applies. Congress passed the Act "to protect the public from sex offenders and offenders against children." 34 U.S.C. § 20901. To that end, the Act prevents citizens "convicted of a specified offense against a minor" from petitioning on behalf of their relatives for a family-based visa "unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition . . . is filed." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). "Specified offense against a minor" is defined as "an offense against a minor that involves," among other things, "[u]se in sexual performance" or "[a]ny conduct that by its nature is a sex offense against a minor." *Id.* § 20911(7)(D), (I). "Sex offense" in turn means "a criminal offense that has an element involving a sexual act or sexual contact with another." *Id.* § 20911(5)(a)(i).

---

Gov't Mot. = The Government's Brief in Support of its Motion to Dismiss (DE 15-1)

Pl. Mot. = The Giordano's Brief in Support of their Cross-Motion for Summary Judgment (DE 27-2)

When confronted with a petition from a citizen to whom the Act may apply, the Service engages in a two-step inquiry. First, the Service determines whether a petitioner's prior conviction qualifies as a "specified offense against a minor." If it does, then the Service determines whether the petitioner nonetheless poses no risk to the relative. *Privett v. Sec'y, Dep't of Homeland Security*, 865 F.3d 375, 379–80 (6th Cir. 2017). For that second determination, the petitioner "must submit evidence of rehabilitation and any other relevant evidence that clearly demonstrates, beyond any reasonable doubt, that he or she poses no risk to the safety and well-being of his or her intended beneficiar[ies]." *Bakran v. Sec'y, U.S. Dep't of Homeland Security*, 894 F.3d 557, 560 (3d Cir. 2018) (quoting U.S. Citizenship & Immigr. Servs., Guidance for Adjudication of Family-Based Petitions and I-129F Petition for Alien Fiancé(e) under the Adam Walsh Child Protection and Safety Act of 2006 (Feb. 8, 2007)).

### B. The Giordanos' Case

The Giordanos are a married couple who petitioned for a spousal visa for Mrs. Giordano and for accompanying employment authorization. (Am. Compl. ¶¶ 6–7.) The Service denied the petition for a spousal visa. The Service noted that Mr. Giordano had been convicted in 1996 for aggravated sexual assault, sexual assault, and endangering the welfare of children. (Notice at 2.) These convictions stemmed from sexual activity with Mr. Giordano's then 15-year-old daughter. (*Id.* at 5.) The Service concluded that each of his convictions qualified as a "specified offense against a minor" under the Adam Walsh Act. (*Id.* at 4.)

Proceeding to analyze the risk Mr. Giordano posed, the Service considered evidence that (1) Mrs. Giordano was not a minor and was close in age to Mr. Giordano, (2) she attested that he never hurt her, and (3) a psychological evaluation stated that Mr. Giordano had a low risk of causing harm. (*Id.* at 4–6.) The Service concluded that Mr. Giordano could not sustain his burden to show no risk because he failed to provide (1) police reports and court records so that the Service could evaluate the circumstances of his convictions, (2) original psychological evaluations, and (3) direct evidence

3

indicating completion of sex offender-specific psychotherapy. (*Id.*) Thus, the Service denied the petition and subsequently denied the applications for employment authorization. (Am. Compl. ¶ 9.)

The Giordanos sued the Service, its Acting Director, and the Attorney General[2] under the APA, alleging that (1) the Adam Walsh Act is impermissibly retroactive, (2) the Act does not apply to their circumstances, (3) the Act is impermissibly retroactive (this count is repetitive of Count 1), (4) the "beyond a reasonable doubt" standard used by the Service is unlawful, (5) the Act violates the Fifth and Eighth Amendments, (6) the Act exceeds the powers of Congress, (7) the Service unlawfully failed to apply the categorical approach when adjudicating their applications, and (8) the denial of the employment authorization was unlawful. (*Id.* ¶¶ 10–25.)

The Government moved to dismiss. (Gov't Mot.) In response, the Giordanos cross-moved for summary judgment. (Pl. Mot.) The Government responded to their arguments but did not take issue with the permissibility of such a cross-motion. (DE 32.)

## II. STANDARD OF REVIEW

"When a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The entire case on review is a question of law." *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks and citation omitted). In such a case, "[a] court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage," and "there is no real distinction in this context between the question presented on a 12(b)(6)

---

[2] When the Giordanos filed their Amended Complaint, William Barr was the Attorney General and Mark Koumans was the Acting Director of the Service. (Am. Compl. ¶ 3.) Now, Merrick Garland is the Attorney General and Tracy Renaud is now the Acting Director of the Service. Pursuant to Fed. R. Civ. P. 25(d), when a public official is a party to an action and subsequently leaves office, that official's successor may be substituted as a party. Accordingly, Merrick Garland is substituted for William Barr; and Tracy Renaud is substituted for Mark Koumans. The accompanying order will direct the clerk of the court to amend the docket and caption accordingly.

motion and a motion for summary judgment." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993); *cf.* 5 U.S.C. § 706(2) ("To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law . . . ."). Accordingly, "[s]ummary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." *Tomasi v. Township of Long Beach*, 364 F. Supp. 3d 376, 389 (D.N.J. 2019) (citation omitted), *aff'd*, 796 F. App'x 766 (3d Cir. 2020). Because the plaintiffs have moved for summary judgment, and the Government does not oppose that procedure, I will treat this case as one presenting cross-motions for summary judgment. *Neto v. Thompson*, 506 F. Supp. 3d 239, 244 (D.N.J. 2020).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "While summary judgment is the proper mechanism for APA cases . . . , the usual summary judgment standard does not apply in the sense that the district court does not need to determine whether there are disputed facts to resolve at trial since the administrative agency is the finder of fact." *Neto*, 506 F. Supp. 3d at 244 (quotation marks and citation omitted). Instead, my task is to review the administrative record and determine whether, as a matter of law, the Service's action complied with the APA. *Id.*

### III. DISCUSSION

The APA empowers courts to review agency actions and set them aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Each "claim" by the Giordanos alleges a different way that the Service's actions here were unlawful. I address each in turn.

### A. Counts 1 and 3

Counts 1 and 3 allege that the Adam Walsh Act should not apply to Mr. Giordano's convictions because they predate the passage of the Act, so that its application would be impermissibly retroactive. (Am. Compl. ¶¶ 11, 15.) "Retroactivity is not favored in the law," and a court may bar a statute's retroactive effect in an appropriate case. *Francisco-Lopez v. Att'y Gen.*, 970 F.3d 431, 436 (3d Cir. 2020), *as amended* (May 15, 2020). To do so, a court must first determine whether a statute is indeed retroactive—*i.e.,* whether it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Bakran*, 894 F.3d at 567 (citation omitted). In *Bakran,* the Third Circuit held that the Adam Walsh Act is not impermissibly retroactive, because "the wrongful activity targeted by the statute is the potential future conduct" of applying for an immigration benefit. *Id.* In other words, the Act does not come into play until a person takes a specific post-enactment action. *See id.* Accordingly, it does not have a retroactive effect, and a retroactivity challenge fails. *Id.*[3]

For those reasons, the Court will enter summary judgment in the Government's favor on Counts 1 and 3.

### B. Count 2

The Giordanos allege that the Service erred in denying the petition because the Adam Walsh Act does not apply to petitions involving consenting adults. (Am. Compl. ¶ 13.) In their view, the Act prohibits sex offenders from petitioning on behalf of child aliens only. (Pl. Mot. at 11.)

Before addressing their reasoning, I must address the Government's argument that I lack jurisdiction over this claim. (Gov't Mot. at 13.) Although the APA allows for judicial review of agency decisions, it bars review where "statutes preclude judicial review" or "agency action is committed to agency

---

[3] The Giordanos concede that their retroactivity claims must fail under *Bakran*. (Pl. Mot. at 11.)

discretion by law." 5 U.S.C. § 701(a). Because the Adam Walsh Act commits the no-risk determination to "the Secretary's sole and unreviewable discretion," that determination is unreviewable. *Bakran*, 894 F.3d at 562. Thus, to the extent the Giordanos allege that the Service should have considered their circumstances and how they interact with the statute's purpose when determining risk, I would lack jurisdiction over that claim.

But the Giordanos also seem to argue that, when the Act is read with its purposes and principles of constitutional avoidance in mind, it does not apply here. To that extent their argument involves, not a discretionary determination, but a "predicate legal issue" which I do have the authority to review. *Privett*, 865 F.3d at 380; *see also Bremer v. Johnson*, 834 F.3d 925, 929 (8th Cir. 2016). In other words, their argument goes to "whether statutory conditions precedent to the agency's authority to exercise discretion have been satisfied." *Bremer*, 834 F.3d at 929. As to such a challenge, I have jurisdiction. *See Bakran*, 894 F.3d at 564 n.5 ("[W]e are not holding that a court lacks jurisdiction to review an action beyond the authority Congress granted to the agency . . . .").

Nonetheless, on the merits, their argument is unpersuasive. They first reason that the purpose of the Act is to protect children, so it should not apply when a citizen petitions on behalf of his consenting adult spouse. Yet the statutory language must be given its natural scope, even if Congress was *most* concerned with a different problem. *Bostock v. Clayton County*, 140 S. Ct. 1731, 1737, 1749 (2020). The statutory sections clearly provide that "any citizen" may petition on behalf of "children, spouses, and parents" unless that citizen "has been convicted of a specified offense against a minor." 8 U.S.C. §§ 1154(a)(1)(A)(i), (viii)(I), 1151(2)(A)(i). Mr. Giordano, as he concedes, plainly falls within the literal terms of the statute. That Congress may have enacted a

7

prohibition broader than the primary evil it sought to address is of no consequence. *See Bostock*, 140 S. Ct. at 1737.[4]

Next, the Giordanos invoke the canon of constitutional avoidance. (Pl. Mot. at 13–14.) Under the canon, when a court faces two readings of a statute, one of which would create a constitutional problem, the court should adopt the interpretation that avoids the problem. *Nielsen v. Preap*, 139 S. Ct. 954, 971–72 (2019). The Giordanos argue that interpreting the Act to apply to them infringes on Mr. Giordano's constitutional rights. But the Act is only capable of one meaning—it applies to Mr. Giordano—so the canon of constitutional avoidance is irrelevant. *Id.*

Perhaps what the Giordanos are saying is that the Act is unconstitutional as applied to Mr. Giordano. *See id.* (even when the constitutional avoidance canon is inapplicable, a plaintiff can bring an as-applied challenge to the statute as interpreted by the court); *Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014) (an "as-applied" challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right"). That argument fares no better, however. The Giordanos never identify which constitutional right of Mr. Giordano's the Act infringes upon. To the extent he invokes the right to marry, the Third Circuit has rejected such a challenge. *Bakran*, 894 F.3d at 564–65.

For these reasons, the Court will enter summary judgment in the Government's favor on Count 2.

---

[4] To the extent the Giordanos argue that it is arbitrary and capricious for an agency to interpret the Act to apply here, that argument fails. Courts only review whether an interpretation is arbitrary and capricious if the statute is ambiguous. *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 52–53 (2011). The Adam Walsh Act is not ambiguous, so the arbitrary-and-capricious standard is not triggered. *Struniak v. Lynch*, 159 F. Supp. 3d 643, 658 (E.D. Va. 2016).

### C. Count 4

The Giordanos allege that the Service's "beyond a reasonable doubt" standard for its no-risk determinations is contrary to the Adam Walsh Act, that it is inconsistent with usual burdens of proof for civil adjudications, and that it violates the APA's requirement that rules go through notice-and-comment rulemaking. (Am. Compl. ¶ 17.) The Third Circuit, however, held that the Secretary has "unreviewable discretion" regarding "the process by which the [he or she] reaches this [no-risk] decision." *Bakran*, 894 F.3d at 563. That means the Secretary alone can decide "the type of proof required, the evidentiary standard a petitioner must satisfy, and whether the petitioner's evidence meets that standard." *Id.* As a result, the *Bakran* court held that it could not review the decision to adopt a "reasonable doubt" standard. *Id.*

Nonetheless, the Giordanos argue that they present a purely legal issue unaddressed by *Bakran*: whether the "reasonable doubt" standard violates other statutory and agency directives commanding that "preponderance of the evidence" is the default burden of proof. (Pl. Mot. at 15–18.) The argument is incorrect. *Bakran* held that the Secretary, and thereby the Service, have specifically been granted the unreviewable discretion to fix "the evidentiary standard." 894 F.3d at 563. The Giordanos disagree with the Secretary's choice of standard, but that is the Secretary's choice to make under the text of the Act. *Id.* What is more, the Giordanos cannot be right that their argument escapes *Bakran*; there, the plaintiff raised the same argument and the *Bakran* Court held that it could not review it. *Id.* at 561 (plaintiff argued that the agency lacked authority to adopt a "reasonable doubt" standard and that notice-and-comment rulemaking was required); *see also* Appellant's Opening Brief at 13–17, *Bakran*, 894 F.3d 557 (No. 16-3440).

I thus lack jurisdiction over Count 4, and it will be dismissed.

### D. Count 5

The Giordanos allege that the Adam Walsh Act, as applied here, violates Fifth Amendment's procedural and substantive due process protections and

9

the Eighth Amendment's protection against cruel and unusual punishment. (Am. Compl. ¶ 19.) I disagree.

First, the Fifth Amendment provides that the federal government cannot "deprive[]" a person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. This guarantee encompasses "a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all," including the right to marry. *Bakran*, 894 F.3d at 564 (citations omitted). The Third Circuit, in a decision which binds this Court, has held that the Adam Walsh Act does not infringe upon that right. *Id.*

The Fifth Amendment also means that the federal government must provide "notice and an opportunity to be heard" before depriving someone of a recognized interest. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (citation omitted); *Dungan v. Slater*, 252 F.3d 670, 676 (3d Cir. 2001). I assume for purposes of analysis that such an interest is implicated here. *But see Kerry v. Din*, 576 U.S. 86, 100–01 (2015) (plurality) (citizen did not have protected interest in her non-citizen husband's visa). Nonetheless, due process only requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation marks omitted). The Giordanos received notice of the possible denial of their petitions, were invited to present evidence and arguments, and received a written, reasoned explanation for the denial. That is sufficient to discharge the government's obligation to afford due process. *Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018); *Bremer*, 834 F.3d at 933.

Finally, the Eighth Amendment "limit[s] the government's power to punish." *Austin v. United States*, 509 U.S. 602, 609 (1993). Accordingly, for the Amendment's limits to apply, the Giordanos must show that the Adam Walsh Act's prohibition is a punishment. *Id.* at 609–10. Yet the *Bakran* court already held that the Act does not seek to punish, but to protect the public from sex offenders by limiting their access to immigration benefits. 894 F.3d at 566 &

n.8. As a result, the Eighth Amendment does not apply. *Bremer*, 834 F.3d at 932.

For those reasons, the Court will enter summary judgment in the Government's favor on Count 5.

### E. Count 6

The Giordanos allege that the Adam Walsh Act "is unconstitutional as an enactment beyond the powers delegated to Congress." (Am. Compl. ¶ 21.) Their brief clarifies that they press two constitutional claims here: (1) the Act is not supported by one of Congress's enumerated powers, and (2) the Act is an unconstitutional delegation of authority from Congress to an agency. (Pl. Mot. at 23–26.) Neither claim has merit.

#### 1. Enumerated Powers

Congress may only pass laws pursuant to its enumerated powers under the Constitution. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 534 (2012). One such enumerated power is the authority to "establish an uniform Rule of Naturalization." U.S. Const. Art. I, § 8, cl. 4. This clause grants Congress a "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). As an act that regulates the status of aliens, the Adam Walsh Act is a proper exercise of that power.

The Giordanos argue that the Act regulates citizens—not aliens—by depriving them of the company of their family members. Because the Act is not focused only on aliens, they reason, it is not an exercise of Congress's power to regulate aliens. (Pl. Mot. at 24–25.) At bottom, however, the Act dictates whether certain persons may receive family-member visas. Although that determination depends on who the citizen-sponsor is, the role of a citizen in the application process does not change the application's fundamental nature as one for an adjustment of alien status. Congress has "broad, undoubted power" in this area, *Arizona*, 567 U.S. at 394, and the Act falls within that scope.

### 2. Non-Delegation Doctrine

The Giordanos' second Constitutional claim rests on the non-delegation doctrine. Although the Constitution grants only Congress the power to legislate, Congress may delegate that power to administrative agencies in the Executive branch "if it lays down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *United States v. Bruce*, 950 F.3d 173, 175 (3d Cir. 2020) (cleaned up). The requirement that Congress provide an "intelligible principle" is called the non-delegation doctrine. *Id.* That doctrine is violated by the Adam Walsh Act, the Giordanos argue, because the Act does not sufficiently cabin the Service's discretion. (Pl. Mot. at 26.) In other words, there is nothing in the statute which would stop the Secretary from, for example, ruling that all applications "filed on a Tuesday must be denied." (*Id.*) Again, it seems that the Giordanos take issue with the Secretary's power to adopt a "beyond a reasonable doubt" standard because its decision to do so was not sufficiently confined by an "intelligible principle" articulated by Congress.

The non-delegation claim fails for two reasons. First, "the non-delegation doctrine applies only to delegations by Congress of legislative power; it has no application to exercises of executive power." *Bruce*, 950 F.3d at 175. Limitations on delegation do not apply where Congress simply allows the Executive to exercise an authority it already enjoys. *Id.* "The exclusion of aliens" is one area where the Executive already enjoys substantial authority. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). Moreover, determining the evidence required to make a decision on an application is an inherently executive power. As such, the broad discretion Congress granted the Secretary through the Adam Walsh Act cannot violate the non-delegation doctrine.

Second, at any rate, Congress in enacting the Adam Walsh Act did provide sufficiently intelligible principles; the Secretary's promulgation of a particular evidentiary standard is a gap he or she is allowed to fill. The Act

provides that the Secretary can grant a visa if "the citizen poses no risk to the alien." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). "No risk" is sufficiently intelligible. *See Gundy v. United States,* 139 S. Ct. 2116, 2129 (2019) (plurality) (collecting cases where the Court upheld "very broad delegations" such as the "public interest," "authorizations for agencies to set 'fair and equitable' prices and 'just and reasonable' rates," and "a delegation to an agency to issue whatever air quality standards are 'requisite to protect the public health'" (citations omitted)). The level of evidence required to assure the Secretary that there is *no* risk is a "feasibility" judgment which the Secretary must make in deciding how to carry out his or her mandate. *Id.* at 2130. In other words, Congress need not provide limits on every aspect of the Secretary's decision-making. *Id.* Congress can give the Secretary "broad general directives" and leave the rest to him or her to implement.

For these reasons, the Court will enter summary judgment in the Government's favor on Count 6.

### F. Count 7

The Giordanos allege that the Service "unlawfully failed to apply the controlling categorical approach" when deciding their application. (Am. Compl. ¶ 23.) In their brief, however, they withdraw Count 7. (Pl. Mot. at 3.) I will treat the withdrawal as a voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2). Count 7 is therefore dismissed.

### G. Count 8

The Giordanos allege that the Service also erroneously denied Mrs. Giordano's employment authorizations. (Am. Compl. ¶ 25.) But because the Service lawfully denied the visa application, the employment authorizations were also properly denied. 8 U.S.C. § 1255(a). 8 C.F.R. §§ 245.1(a), (b), 274a.14(b)(1). For that reason, the Court will enter summary judgment in the Government's favor on Count 8.

## IV. CONCLUSION

For the reasons set forth above, the Government's motion to dismiss is treated as one for summary judgment and is granted. The Giordanos' cross-motion for summary judgment is denied.

A separate order will issue.

Dated: July 14, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**